IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:23mj84 |
| | ) | |
| JOSIAH LANDROM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's First Motion for Issuance of Subpoenas. ECF No. 33. By his Motion, Defendant Josiah Landrom seeks the issuance of a subpoena to Alicia's Place, a mental health clinic which has treated E.R.H., the alleged victim of the assault in this case, and his family. *Id.* Defendant seeks either E.R.H.'s complete therapy file from Alicia's Place or, in the alternative, production *in camera* to the Court. *Id.*; ECF No. 36 at 2–3. The Government filed its opposition, ECF No. 35, and Defendant replied, ECF No. 36. The Court held a motion hearing on April 17, 2024, at which Special Assistant United States Attorney Justin Adams and Assistant United States Attorney Dee Sterling appeared for the Government, and Assistant Federal Public Defenders Virginia Bare and Amanda Conner appeared for Defendant Josiah Landrom. On April 18, the Court issued an Order granting the Motion in part, authorizing a subpoena duces tecum to Alicia's Place to be produced under seal to the Court for *in camera* review. ECF No. 42. The Court noted its review would be limited to determining whether the records only contain privileged communications or whether they also contain non-privileged material. *Id.* This Opinion further explains the Court's reasoning with respect to ECF No. 42.

## I.   BACKGROUND

On November 29, 2023, Defendant Josiah Landrom was charged by criminal information with one count of unlawful assault on an individual, E.R.H., under the age of sixteen, in violation of 18 U.S.C. § 113(a)(5). ECF No. 1. The alleged incident occurred at a Child Development Center ("CDC") on Fort Eustis where Mr. Landrom was working. ECF No. 33 at 2. E.R.H. was three years old at the time of the alleged incident. Over the course of the investigation, defense counsel became aware that E.R.H. was the subject of "numerous infraction reports" documenting behavioral incidents at the CDC. *Id.* at 3.

On March 6, 2024, the Government produced a letter from Alicia's Place to defense counsel. *Id.* The letter, dated February 28, 2024, stated that E.R.H. was participating in ongoing Parent Child Interactive Therapy ("PCIT") at Alicia's Place and had been diagnosed with Adjustment Disorder with Mixed Disturbance of Emotions and Conduct. *Id.* E.R.H.'s father requested the letter from Alicia's Place to aid in a civil proceeding. *Id.*

After learning of the existence of E.R.H.'s mental health records, Defendant filed the instant Motion seeking issuance of a subpoena to Alicia's Place, arguing that the records are relevant to E.R.H.'s conduct and to Defendant's case. *Id.* At trial, Defendant plans to argue that although he restrained E.R.H., he only did so to avoid being scratched and bitten. *Id.* at 5. In its response to the Motion, the Government asserted the psychotherapist-patient privilege, and argued that Alicia's Place's records constitute communications protected from disclosure by the privilege. ECF No. 35 at 2–3. In reply, Defendant argued that the psychotherapist-patient privilege only applies to confidential communications and excludes non-communications, such as observations. ECF No. 36 at 3.

The Court then ordered a hearing on the Motion. ECF No. 37. In its Order, the Court requested counsel be prepared to address: (1) whether observational notes constitute communications under the psychotherapist-patient privilege, and (2) whether and to what extent E.R.H.'s father waived the privilege by producing the February 28 letter to the Government and using the February 28 letter during the civil proceeding. *Id.* At the hearing, the Court raised an additional question–whether the Government has standing to assert the psychotherapist-patient privilege on behalf of E.R.H. and his father.

At the hearing, the Court first took up the question of whether records from Alicia's Place would generally constitute communications, observations, or some intertwined combination of the two. Dr. Alicia Meyer, Executive Director and licensed clinical psychologist at Alicia's Place, testified that E.R.H. and his family engaged in PCIT, a two-phase cognitive behavioral therapy. After the Court directed Dr. Meyer not to disclose anything specific about the family's treatment, she testified about the PCIT process generally and the types of records maintained by therapists during this treatment. Dr. Meyer explained that PCIT is structured so the therapist is positioned behind a one-way mirror and the child and caregiver are positioned in a playroom on the other side of the mirror. The therapist uses a microphone, linked to a listening device in the caregiver's ear, to provide direction, feedback, and commentary to the caregiver and child.

Dr. Meyer noted the first thing therapists at Alicia's Place do is conduct an intake questionnaire, asking the child and their family about medical and behavioral information. They also discuss and sign confidentiality paperwork. Then, the actual therapy sessions begin. The first PCIT session is observational only, so the therapist can see the child and caregiver's (typically the parent) baseline of interaction without any intervention. The second PCIT appointment consists of a coaching session with the caregiver only, in which the therapist teaches the caregiver the

necessary skills they will implement over the subsequent sessions. Then the first phase of PCIT, called the child-directed interaction phase, begins. During the child-directed interaction phase, the therapist teaches the child pro-social behaviors, such as relationship building, and attempts to cultivate a secure attachment between the child and their caregiver. In the second phase, referred to as the parent-directed interaction phase, the therapist teaches discipline and listening skills. After approximately sixteen weeks, the child graduates from PCIT.

Each PCIT appointment is structured the same way. The therapist begins by checking in with the child and their caregiver to see how the child is doing. Then, the caregiver and child begin interacting in the playroom while the therapist observes behind the one-way mirror, takes notes, and codes the interaction. After a few minutes of coding the interaction, the therapist begins communicating with the caregiver through the microphone and listening device, sometimes by providing line by line instructions, other times providing general commentary, and positive reinforcement. At the end of the session, the therapist assigns homework for the caregiver and child to complete during the week.

Dr. Meyer explained that therapists conducting PCIT record a variety of notes. She noted that a child's file typically contains the intake questionnaire and confidentiality forms; symptom checklists detailing how the child has behaved over the last seven days; treatment plans which are updated every six sessions or ninety days; discharge summaries; and progress notes. The progress notes, often utilizing various codes, notate comments made by the caregiver or the child, subjective and objective observations made by the therapist, an assessment of the session, and the treatment plan.

The Court and counsel also questioned E.R.H.'s father during the hearing. E.R.H.'s father affirmatively asserted the psychotherapist-patient privilege on behalf of his child. He also

confirmed that he requested the diagnosis letter from Alicia's Place to be used in the civil proceeding. However, E.R.H.'s father clarified that although he requested the letter for use at the civil proceeding, the judge in that case determined that this issue was not germane to the proceeding. Consequently, the letter was not used as evidence, was not given to the opposing party, and he did not testify as to the letter or the details of E.R.H.'s therapy.

## II. LEGAL STANDARD

Rule 17 of the Federal Rules of Criminal Procedure provides that a subpoena may order the production of "any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). If a party by subpoena seeks to obtain confidential information about a victim from a third party, they may only do so by court order. Fed. R. Crim. P. 17(c)(3). The victim must be provided notice and an opportunity to object. *Id.*

The party seeking the subpoena must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700 (1974).

Subpoenaed documents may also be subject to additional issues regarding privilege. In a federal criminal case, privilege is governed by federal law. Fed. R. Evid. 501; *United States v. Gillock*, 445 U.S. 360, 368 (1980) ("Rule 501 requires the application of federal privilege law in criminal cases brought in federal court."). The United States Supreme Court, in *Jaffee v. Redmond*, 518 U.S. 1 (1996), recognized the existence of the psychotherapist-patient privilege in federal cases, holding that confidential communications between a patient and a licensed social worker,

5

exchanged during the course of diagnosis or treatment, are protected from disclosure. 518 U.S. at 15–17. The party asserting the privilege has the burden of establishing that the privilege applies. *United States v. Lara*, 850 F.3d 686, 690 (4th Cir. 2017) ("We have 'strictly construed' this privilege, and have emphasized that the party invoking the privilege bears the burden of showing that the privilege applies, including the absence of any waiver of privilege."). Despite the confidentiality requirement, a parent's presence during a child's therapy session does not typically prevent the privilege from attaching. *See* 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 504.08(3) (Joseph M. McLaughlin, 2d ed. 2006).

### III. DISCUSSION

Defendant's Motion implicates several issues for the Court to consider including: (1) standing, (2) whether the therapist's notes from Alicia's Place contain non-privileged material, (3) whether E.R.H.'s father has waived the psychotherapist-patient privilege, and (4) whether the subpoena can be enforced pursuant to Rule 17(c). The Court will address each issue in turn.

   1. <u>Standing to Assert the Psychotherapist-Patient Privilege</u>

At the hearing, the Court raised the issue of whether the Government could assert standing on behalf of E.R.H. and his family. At least one federal court has implied that the Government may do so. *See United States v. Blue*, 340 F. Supp. 3d 862, 865 n.2 (D.S.D. 2018) ("The Crime Victims' Rights Act (CVRA) arguably gives the government a basis for [asserting the privilege]. Rule 17(c)(3) was added in 2008 to implement that provision of the CVRA giving crime victims the 'right to be treated with fairness and with respect for the victim's dignity and privacy.' 18 U.S.C. § 3771(a)(8); Fed. R. Crim. P. 17 advisory committee's note to 2008 amendment. Another provision of the CVRA states that the 'attorney for the Government may assert the rights described in' § 3771(a)."). However, because E.R.H.'s father appeared at the April 17 hearing and

6

affirmatively asserted the psychotherapist-patient privilege, the Court believes it unnecessary to ultimately decide that issue and **FINDS** that E.R.H.'s father has standing to assert the privilege on his child's behalf.[1]

### 2. The Nature of the Notes and Records from Alicia's Place

In his reply, Defendant argues that the PCIT records likely contain at least some non-privileged material, including observations or objective testing. ECF No. 36 at 2-3. At the hearing, the Defendant further clarified his position that, due to the unique nature of PCIT, these records would not be covered by the privilege. In response, the Government argued that the records do, in fact, constitute covered communications.

The psychotherapist-patient privilege protects confidential communications between a patient and a licensed social worker made during the course of diagnosis or treatment.[2] *Jaffee*, 518 U.S. at 15-17. Since *Jaffee*, courts have attempted to define the parameters of the privilege, including what, if any, exceptions apply. *See United States v. Ray*, 585 F. Supp. 3d 445, 457 (S.D.N.Y. 2022) ("[I]nformation about medications prescribed in the course of treatment would not be privileged . . . the prescription does not constitute or reveal a communication but constitutes a reflection of the therapist's judgment on how to treat the diagnosis."); *United States v. Whitney*, No. 05-40005, 2006 WL 2927531, at *3 (D. Mass. Aug. 11, 2006) (noting that "clinical impressions based on observations (e.g., of how a patient interacts with others) generally do not

---

[1] Given E.R.H.'s infancy, his father is best suited to assert the privilege on his behalf. *See* 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 504.09(1)(a) (Joseph M. McLaughlin, 2d ed. 2006) ("The privilege is the patient's, not the psychotherapist's. It may be claimed by the patient, the patient's guardian or conservator in cases of infancy or incompetency, or the personal representative of a deceased patient.").

[2] Importantly, when applying the psychotherapist-patient privilege in the criminal context, the Fourth Circuit has held that courts should not apply a balancing test weighing a patient's privacy interest against the evidentiary needs of the case. *Kinder v. White*, 609 F. App'x 126 (4th Cir. 2015). If the privilege applies, there is no further inquiry. *See id.*

qualify" as privileged); *United States v. Ciancia*, No. CR 13-902, 2015 WL 13798675, at *3 (C.D. Cal. Sept. 4, 2015) (explaining that a therapist's observations regarding the defendant's assistance with meal service and appropriate behavior did not constitute privileged communications made during the course of diagnosis or treatment). However, courts do seem to agree that "where the information being sought would convey the content of what the patient tells the treatment provider—whether in words or nonverbal acts—or where it is inextricably intertwined with such information, it would enjoy the protection of the privilege." *Ray*, 585 F. Supp. 3d at 457.

At the outset, it appears that the unique nature of PCIT has not been analyzed in the context of the psychotherapist-patient privilege. The Court agrees with Defendant's argument that PCIT is not necessarily the quintessential talk therapy originally contemplated in *Jaffee*. Much of the caselaw, even that which involves minors, is in the context of talk therapy. PCIT is different in nature. The therapist stays behind a one-way mirror with the child and caretaker on the other side, and carefully observes and communicates with the caretaker, providing instructions, prompting certain actions, and in some cases, directing the caretaker state specific sentences to the child. With PCIT, there is not generally the same kind of constant direct back and forth communication that occurs in traditional talk therapy. Despite that, the Court is mindful of the principles set forth in *Jaffee* that "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears" and that "because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace." 518 U.S. at 10. Just because PCIT is not the traditional talk therapy contemplated in *Jaffee* does not mean that it is not a form of psychotherapy dependent on that same "atmosphere of confidence and trust." *See id.*

8

It is clear to the Court that, based on Dr. Meyer's testimony, there will be privileged communications in the records from Alicia's Place. Those include, but are not limited to, the conversations at the outset of each session where the caregiver updates the therapist how child is behaving, any of the therapist's directions to the caregiver, and any questions or comments that the caregiver or patient ask. Even nonverbal actions, such as a nod or shrug, intended to communicate or respond to the therapist's question or comment, would enjoy the protection of the privilege. *See Ray*, 585 F. Supp. 3d at 455–56 ("That a patient, in the course of treatment, chooses to express his emotions by nonverbal conduct rather than verbal conduct does not make it inherently non-communicative."). Indeed, even the therapist's observational notes that are "inextricably intertwined" with such communications, would be privileged. *See id.* at 457.

However, it is also clear to the Court that the records may contain independent observations, disconnected from any such communication, that may not be privileged. Dr. Meyer testified that although the notes would not always clearly distinguish between observations and communications, the therapist is responsible for tallying up each different interaction that she observes and making a record of those observations. Therefore, the Court's *in camera* review is necessary to establish if the therapist's independent observations can be parsed from the privileged communications or whether the two are so inextricably intertwined so as to render the records privileged as a whole.

The Court also notes that the remainder of the psychotherapist-patient privilege requirements appear to be satisfied. First, *Jaffee* requires that the communications be confidential. 518 U.S. at 15. Here, it seems that they are. E.R.H.'s father purportedly signed a confidentiality agreement during the initial intake session at Alicia's Place. E.R.H.'s father was also required to sign a waiver before Alicia's Place would produce a letter with E.R.H.'s diagnosis and the basic

9

details of his care. Further, Dr. Meyer confirmed that Alicia's Place considers all of its records to be confidential. Next, *Jaffee* mandates that the communications occur between a licensed psychotherapist and patient. Here, no one disputes that the therapist working with E.R.H. and his family, a licensed clinical social worker, qualifies under the privilege. *See id.* ("We have no hesitation in concluding in this case that the federal privilege should also extend to confidential communications made to licensed social workers in the course of psychotherapy."). Finally, *Jaffee* requires the communications at issue be made during the course of diagnosis and treatment. *Id.* Here, it is undisputed that the communications at issue were made during the course of E.R.H.'s diagnosis and treatment. Therefore, the Court **FINDS** that the psychotherapist-patient privilege applies, at least in part, to PCIT records and that *in camera* review is necessary to determine if the records contain any non-privileged material.

### 3. Waiver

Despite finding that the privilege applies, the Court must next determine whether records subject to the privilege nonetheless must be produced because E.R.H.'s father waived his privilege. Defendant argues that E.R.H.'s father waived the privilege when he: (1) turned the February 28 letter over to the Government, (2) used the letter during the civil proceeding, and (3) discussed E.R.H.'s therapy with investigators in this matter. In response, the Government argues that E.R.H.'s father did not, in fact, waive the privilege. Counsel provided the Court with a copy of the letter and a copy of the investigative interview to review. ECF No. 33, attach. 1; ECF No. 41.

As with any privilege, the psychotherapist-patient privilege may be waived either directly or impliedly. A direct waiver of the privilege occurs when the patient "knowingly and voluntarily relinquish[es] it." U*nited States v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013) (citing *United States v. Hayes*, 227 F.3d 578, 586 (6th Cir. 2000)). Such a waiver occurs when "the ***substance***

10

*of therapy sessions* is disclosed to unrelated third parties." *See id.* (emphasis added); *Hayes*, 227 F.3d at 586 (explaining that "a patient can waive the protections of the psychotherapist/patient privilege by disclosing the substance of therapy sessions to unrelated third parties"). The privilege may also be waived if it is not properly asserted during testimony. *See Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998) ("By answering the question as [the defendant] did, [the defendant] both waived her [attorney-client] privilege and provided probative evidence [on the subject matter].").

To waive the psychotherapist-patient privilege, its holder must do more than speak of a diagnosis and the fact of treatment—he or she must disclose "the substance of therapy sessions." *United States v. Babarinde*, 126 F. Supp. 3d 22, 25–26 (D.D.C. 2015) (quoting *Bolander*, 722 F.3d at 223). For example, in *Babarinde*, the court found that the witness did not waive her privilege, even though she "identified her mental health diagnoses," "described to the [c]ourt what medications she was taking and the impact those medications had on her emotional and cognitive abilities," and even testified that her "doctor said that depression . . . can affect [her] memory because [she] told him[,] [she] said [she] can't remember stuff[,] [a]nd he said well, that's a symptom of [her] depression." *Id.* There, the court found that the witness had not disclosed the "substance" of her therapy sessions, nor did she reveal any "relevant confidential communications" between herself and her psychotherapist. *Id.* (internal quotations and citations omitted).

Here, the February 28 letter prepared by Alicia's Place merely discloses E.R.H.'s diagnosis and the fact of treatment, neither of which are privileged communications, and therefore disclosure of this information does not, and cannot, constitute a waiver. Additionally, E.R.H.'s father explained that the civil judge did not permit the issue of the family's therapy to be brought into that proceeding and thus the letter was not submitted to the court, nor was the issue of the family's

11

treatment disclosed or addressed in any amount of detail. As such, there cannot be a waiver due to any statement E.R.H.'s father made during the civil proceeding.

Second, the information E.R.H.'s father gave to officers during the investigation in this matter does not disclose any more information than the aforementioned letter. E.R.H.'s father noted that E.R.H. is in therapy, that he has a history of behavioral issues, and that he has certain triggers which cause him to act out. None of those statements reveal the "substance" of the therapy sessions. *See Bolander*, 722 F.3d at 223; *Babarinde*, 126 F. Supp. 3d at 25–26. Nor did E.R.H.'s father disclose any confidential communication he made to his child's therapist or that his child's therapist made to him or his child. Accordingly, the Court **FINDS** the privilege has not been waived.

4. <u>Enforcement of a Rule 17 Subpoena</u>

Having found that E.R.H.'s father has asserted the privilege, that at least some of the records may not be privileged, and that the privilege has not been waived, the Court turns next to the question of whether the records requested in the subpoena also meet the test established in *Nixon*. A party seeking a Rule 17 subpoena must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699–700. Consequently, "a defendant seeking a Rule

17(c) subpoena 'must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'" *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (quoting *Nixon*, 418 U.S. at 700).

At this stage in the proceeding, the Court finds that the Defendant has preliminarily satisfied the requirements under Rule 17. First, given the Defendant's assertion of self-defense, it is apparent that the PCIT records are potentially relevant to Defendant's case, to the extent they reveal E.R.H.'s behavior of biting, scratching, and spitting. *See* ECF No. 33 at 5. Second, the records are likely admissible under Federal Rule of Evidence 803(4) as statements made for medical diagnosis and treatment, given that they were created and kept by a mental health facility for purposes of treating and diagnosing E.R.H., or under Federal Rule of Evidence 803(6) as business records, kept in the ordinary practice of a mental health facility. Finally, Defendant's subpoena satisfies the specificity prong.[3] The Defendant has knowledge of E.R.H.'s diagnosis, his general behavior, and the kind of therapy he is undergoing. Defendant also limited his request in time and is seeking a "defined categor[y] of document[]," E.R.H.'s therapy file, as required under *Nixon*. *See United States v. Crosland*, 821 F. Supp. 1123, 1129 (E.D. Va. 1993). In sum, Defendant's subpoena is tailored to the records relevant to his defense. Requesting the production of such records is therefore not a "fishing expedition." As such, the Court **FINDS** that the Defendant, at this juncture, has satisfied the requirements for a Rule 17(c) subpoena.

## IV. CONCLUSION

At this point in time, the Court cannot determine whether any record from Alicia's Place contains non-privileged material without reviewing the records. To that end, the Court has

---

[3] The Government argues that E.R.H.'s father could testify as to his son's diagnosis and therapy, in lieu of the records from Alicia's Place. ECF No. 35 at 2. The Defendant disagrees, arguing that as a layperson, he would be unable to explain the diagnosis with any level of specificity. ECF No. 36 at 4. The Court concurs. E.R.H.'s father is an inadequate substitute for the records, as he, to the Court's knowledge, does not have a background in psychotherapy, nor is he an expert qualified to testify to the specifics of his child's diagnosis.

13

authorized the subpoena to be issued to Alicia's Place for these records to be produced under seal for *in camera* inspection. From there, the Court will determine whether any of the records fall outside the scope of the psychotherapist-patient privilege and therefore may be disclosed. Upon receipt of the subpoena, should they so choose, Alicia's Place and E.R.H.'s father will have the opportunity to file a motion to quash pursuant to Rule 17(c)(2), formally assert the psychotherapist-patient privilege, and argue each element of that privilege.

The Clerk is **DIRECTED** to forward a copy of this memorandum opinion to counsel for the Government and Defendant. The Government is **DIRECTED** to forward a copy of this memorandum opinion and the preceding Order, ECF No. 42, to E.R.H.'s father and to Dr. Alicia Meyer at Alicia's Place.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
April 24, 2024